IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| TERRY LEE CLIFTON, | ◊ | |
| | ◊ | |
|     Petitioner, | ◊ | |
| | ◊ | |
| VS. | ◊ | No. 05-1108-T/An |
| | ◊ | |
| TONY PARKER, | ◊ | |
| | ◊ | |
|     Respondent. | ◊ | |

ORDER OF DISMISSAL
ORDER DENYING CERTIFICATE OF APPEALABILITY
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
ORDER DENYING LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS*

Petitioner Terry Lee Clifton, Tennessee Department of Correction ("TDOC") prisoner number 100826, an inmate at the Northwest Correctional Complex ("NWCX") in Tiptonville, Tennessee,[1] filed a *pro se* petition pursuant to 28 U.S.C. § 2241 in the United States District Court for the Middle District of Tennessee on March 14, 2005, along with a memorandum of law, a factual affidavit, more than two inches of supporting documents, and a motion seeking leave to proceed *in forma pauperis*. United States District Judge Aleta A.

---

[1] The docket sheet erroneously indicates that Clifton is incarcerated at the Southeastern Tennessee State Regional Correctional Facility in Pikeville, Tennessee. The documents Clifton has filed in this case, as well as the TDOC website, indicate that he is incarcerated at the NWCX. The Clerk is directed to modify the docket to reflect the petitioner's correct address.
    The Clerk is further directed to modify the docket to reflect that this is a petition filed pursuant to 28 U.S.C. § 2241 rather than 28 U.S.C. § 2254.

Trauger granted leave to proceed *in forma pauperis* on March 16, 2005 and, on March 21, 2005, transferred the petition to this district, where the convicting court is located. The petition was docketed in this district on April 8, 2005. The Clerk shall record the respondent as NWCX warden Tony Parker.[2]

On August 11, 2005, Clifton filed a document, entitled "Second Supplemental Amended Petition for Writ of Habeas Corpus," in order to set forth more recent events concerning his original petition. On August 12, 2005, Clifton filed another copy of that document that included his signature, two additional exhibits and additional case citations.

I.   STATE COURT PROCEDURAL HISTORY

On September 20, 1983, Clifton was convicted by a Madison County Circuit Court jury of grand larceny and, after being found an habitual offender,[3] he received a life sentence. The Tennessee Court of Criminal Appeals affirmed in an unreported decision. State v. Clifton, C.C.A. No. 22 (Tenn. Crim. App. May 31, 1984).[4]

In the more than twenty years since his conviction became final, Clifton has filed numerous unsuccessful challenges to his conviction and sentence. In 1985, petitioner filed in state court a *pro se* petition pursuant to the Tennessee Post-Conviction Procedure Act,

---

[2] Although the petition lists the respondent as Charles Traughber, Chairman of the Tennessee Board of Probation and Paroles, the proper respondent to a habeas petition is the petitioner's custodian. Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). Accordingly, the Clerk is directed to remove Charles Traughber as a party to this action.

[3] In 1977, Clifton entered guilty pleas to five counts of forgery and, in 1981, he entered guilty pleas to three counts of forgery.

[4] In a previous petition pursuant to 28 U.S.C. § 2254, Clifton asserted that he filed an application for permission to appeal to the Tennessee Supreme Court, which was denied on October 1, 1984.

Tenn. Code Ann. § 40-30-101 *et seq.*, alleging that he received ineffective assistance of counsel in connection with his grand larceny conviction and that his appellate counsel was ineffective for not challenging the sufficiency of the evidence on direct appeal. The postconviction court dismissed the petition after appointment of counsel and an evidentiary hearing, and the Tennessee Court of Criminal Appeals affirmed, State v. Clifton, C.C.A. No. 8, 1986 WL 2308 (Tenn. Crim. App. Feb. 19, 1986).[5]

Thereafter, Clifton apparently filed a petition pursuant to 28 U.S.C. § 2254 in this district in which, *inter alia*, he challenged the constitutionality of the Tennessee Habitual Criminal Act.[6] The petition was dismissed, and the Sixth Circuit affirmed, Clifton v. Cook, No. 86-5257, 1986 WL 18427 (6th Cir. Nov. 20, 1986) (per curiam), *cert. denied*, 480 U.S. 937 (1987).

On November 30, 1988, Clifton filed a second postconviction petition in state court, this time attacking the validity of his 1977 and 1981 guilty pleas. The postconviction court dismissed the petition on October 5, 1989, holding that the claims were waived for failure to include them in the 1985 postconviction petition. Subsequently, the Tennessee Supreme Court issued its decision in State v. Prince, 781 S.W.2d 846 (Tenn. 1989), which held that a defendant does not waive the right to challenge prior guilty pleas by failing to include such

---

[5] Again, Clifton contended in a previous § 2254 petition that he filed an application for permission to appeal to the Tennessee Supreme Court. This purported application is not reflected on WESTLAW.

[6] Although this petition does not appear on the computerized docketing system currently in use in this district, Clifton attached as an exhibit to a previous § 2254 petition the first page of the order of dismissal, which indicates that the case number was 84-1281.

challenges in a postconviction petition attacking a sentence that was enhanced by those guilty plea convictions. As a result, the Tennessee Court of Criminal Appeals reversed the dismissal of Clifton's second postconviction petition and remanded for an evidentiary hearing regarding the constitutionality of the underlying guilty pleas. State v. Clifton, C.C.A. No. 26, 1990 WL 170414 (Tenn. Crim. App. Nov. 7, 1990). After an evidentiary hearing, the postconviction court denied the second petition, and the Tennessee Court of Criminal Appeals affirmed. Clifton v. State, No. 02C01-9110-CC-00234, 1994 WL 123635 (Tenn. Crim. App. Apr. 13, 1994). Clifton's petition seeking permission to appeal to the Tennessee Supreme Court was dismissed on September 12, 1994.

Clifton apparently filed a motion in the Madison County Circuit Court in 1999 seeking to reopen his second postconviction petition. The postconviction court appointed counsel and, on October 15, 1999, issued an order denying the motion to reopen. Clifton appealed to the Tennessee Court of Criminal Appeals, which issued an order denying the appeal on the ground that it was not timely filed. Clifton v. State, C.C.A. No. W1999-CCA-R28-PC (Tenn. Crim. App. Mar. 8, 2000). Clifton filed a motion for reconsideration asserting that, because of a delay by the court clerk, he did not receive the postconviction court's order in time to file a timely notice of appeal. Although the Tennessee Court of Criminal Appeals apparently accepted Clifton's showing as to the timeliness of his filing, it nonetheless concluded, after reviewing the materials submitted, that

> no rehearing or reconsideration of this matter is necessary. On its face, the trial court's order of denial demonstrates that petitioner is time-barred from any further action on these matters and that the trial court did not abuse its

>discretion in denying the motion to re-open his petition for post-conviction relief.

Clifton v. State, C.C.A. No. W1999-CCA-R28-PC, slip op. at 2 (Tenn. Crim. App. Apr. 26, 2000), *perm. app. denied* (Tenn. Dec. 11, 2000).

Clifton filed a second petition pursuant to 28 U.S.C. § 2254 in the United States District Court for the Middle District of Tennessee on November 2, 2001, along with an application to proceed *in forma pauperis*. In an order entered on November 9, 2001, Judge Trauger granted leave to proceed *in forma pauperis* and transferred the case to this district, where it was docketed on February 28, 2002. This Court issued an order on April 26, 2002 dismissing the petition as barred by the statute of limitations and procedural default and denying a certificate of appealability. Clifton v. Bell, No. 02-1050 (W.D. Tenn.). Judgment was entered on April 29, 2002. Clifton filed a notice of appeal, and the Sixth Circuit denied a certificate of appealability. Clifton v. Bell, No. 02-5754 (6th Cir. Jan. 15, 2003).

Clifton also filed a petition for a writ of habeas corpus pursuant to Tenn. Code Ann. § 29-21-101 *et seq.* in the Lake County Circuit Court on an unspecified date in which he challenged his designation as a habitual offender. The trial court dismissed the petition without appointing counsel or conducting an evidentiary hearing, and the Tennessee Court of Criminal Appeals affirmed. Clifton v. State, No. W2004-01385-CCA-R3-HC, 2005 WL 1363104 (Tenn. Crim. App. June 9, 2005).

At the time Clifton's sentence was imposed, prisoners sentenced to life became eligible for parole after serving thirty years; therefore, his original release eligibility date was

December 2012. As a result of subsequent changes in the law, Clifton's early release date was later changed to 1998 because his trigger and underlying convictions were not violent crimes.

As a result of changes in Tennessee law governing criminal sentencing, the Tennessee legislature created a Parole Eligibility Review Board ("PERB") to review the release eligibility dates of habitual offenders. Pursuant to the Criminal Sentencing Reform Act of 1989, Tenn. Code Ann. § 40-35-602 (the "Act"), if an habitual criminal had been convicted prior to the passage of the Act, the PERB was authorized to compare his current release eligibility date to the release eligibility date he would have had if he had been convicted after passage of the Act. If the new release eligibility date would have been earlier than his current date, the PERB was authorized (but not required) to amend his release eligibility date to reflect the earlier date he would have received under current law. The Act was amended in 1993 to prevent the PERB from altering the release eligibility dates of habitual criminals whose triggering offense was an offense against the person. The PERB was given complete discretion whether to modify the inmate's release date. On or about December 22, 1992, Clifton received a letter from the PERB advising him of his new release eligibility date of June 1, 1993.

Clifton had his first parole hearing in June 1993, at which time parole was denied due to the seriousness of the offense, high risk, and disciplinary reports. The Tennessee Board of Probation and Paroles (the "Board") determined that Clifton would next be eligible for parole in one year.

Clifton's second parole hearing occurred in June 1994, at which time the hearing officer again denied parole due to the seriousness of the offense, high risk, and disciplinary reports. His third parole hearing was set for June 1995. At that time, Clifton allegedly appeared before two Board members, who recommended early release on October 1, 1995 on the condition that, due to his long confinement, he go to pre-release for ninety days. Three members of the Board rejected that recommendation due to the seriousness of the offense, high risk, and disciplinary reports and set his next parole hearing for January, 1996.

Clifton appeared before a parole hearing officer on January 2, 1996, who recommended his release on parole. The Board approved the recommendation and set a release date of April 16, 1996. After satisfying certain initial requirements, Clifton continued on parole until the issuance of a parole violation warrant on or about November 20, 1997 that charged him with stalking a former girlfriend.[7] He was subsequently charged with a number of other parole violations, including not working steadily, two positive drug tests, and a fee arrearage. Clifton was eventually found guilty of one positive drug test and the fee arrearage, and his parole was revoked on June 17, 1998.[8] Clifton asserts he filed an administrative appeal and was granted a second revocation hearing on November 2, 1998 with the same

---

[7] Clifton contends that his former girlfriend, Anita Davis Books, had conspired to free her brother, who was in prison on a charge of rape, by supplying an affidavit, purportedly signed by the victim, recanting her allegations. Clifton supplied an affidavit to the State attesting that the affidavit was a forgery. See Davis v. Earls, No. W2000-00280-COA-R3-CV, 2001 WL 589138, at *1 (Tenn. Ct. App. May 30, 2001). He asserts the stalking claim was made in retaliation for that affidavit. Criminal charges were apparently filed against Clifton but were dismissed.

[8] The petition asserts that the hearing officer revoked Clifton's parole but recommended that he be reparoled. However, two members of the Board voted to decline parole until June 1999, and the third apparently voted to decline parole indefinitely.

result. Clifton was denied parole in or about July 1999.

Clifton filed an action pursuant to 28 U.S.C. § 1983 in the United States District Court for the Middle District of Tennessee on April 3, 2000 in connection with the revocation of parole and subsequent denial of parole, and Judge Trauger dismissed the complaint as frivolous on that date. Clifton v. Sundquist, et al., No. 3:00-cv-00307 (M.D. Tenn.). The United States Court of Appeals for the Sixth Circuit affirmed. Clifton v. Sundquist, et al., 3 Fed. Appx. 277 (6th Cir. Jan. 26, 2001).

Although the petition does not set forth the subsequent events at length, it appears that Clifton was denied parole in July 2001 and again in February 2005. His next parole hearing is scheduled for February 2006.

## II.     PETITIONER'S FEDERAL HABEAS CLAIMS

The issues Clifton seeks to raise in this federal habeas petition are not clearly articulated. It appears that he is challenging the denials of parole in 1993, 1994, 1995, 1998, 1999, 2001, and 2005, as well as the revocation of his parole in 1998.

## III.    ANALYSIS OF THE MERITS

The first matter to be considered is whether this petition is second or successive within the meaning of 28 U.S.C. § 2244(b), such that this Court lacks authority to consider it without prior authorization from the Sixth Circuit. As previously mentioned, Clifton previously filed two § 2254 petitions, the first in 1986 and the second in 2001, attacking his conviction and sentence, which were denied. He now seeks to file a § 2241 petition challenging multiple denials of parole and the revocation of his parole in 1998. The issues

raised in this petition are completely different from those raised in the 2001 petition.[9]

The Sixth Circuit has not offered clear guidance on whether challenges to the denial of parole by state prisoners are properly brought under § 2241 or § 2254 and, regardless of which statute is applicable, whether a petition filed by a state prisoner challenging a parole denial is second or successive within the meaning of § 2244(b) where the prisoner had previously filed a § 2254 petition challenging the validity of his conviction or sentence. Other circuits have held that the challenges to the denial of parole are not second or successive in these circumstances. Hill v. Alaska, 297 F.3d 895, 897-99 (9th Cir. 2002); Crouch v. Norris, 251 F.3d 720, 723-25 (8th Cir. 2001).[10] The Court finds the reasoning of these decisions to be persuasive and, therefore, concludes that this petition is not second or

---

[9] Because Clifton was not yet eligible for parole when he filed his first § 2254 petition in 1986, the Court assumes that the issues raised in this petition are different from those raised in his first § 2254 petition.

[10] The state of the law in the Sixth Circuit is unclear, although there is some indication this petition would not be viewed as second or successive. In In re Slatton, No. 97-0378, 1998 WL 661148 (6th Cir. Sept. 1, 1998), an unpublished decision, a Sixth Circuit panel held that a petition challenging parole proceedings, filed after a previously submitted petition was dismissed with prejudice due to a procedural default, is not a second or successive application for purposes of § 2244(b). In so holding, the panel explained that habeas petitions challenging the denial of parole can only be brought under 28 U.S.C. § 2241, id. at *3, and the restrictions on second or successive petitions found in § 2244(b) are applicable only to § 2254 petitions, id. It appears, therefore, that the Sixth Circuit in Slatton converted a § 2254 petition to one brought under § 2241 *sua sponte*.

Subsequently, however, the Sixth Circuit endorsed the Seventh Circuit's statement that "'[r]oughly speaking, . . . § 2254 [is] the exclusive vehicle for prisoners in custody pursuant to a state court judgment who wish to challenge anything affecting that custody, because . . . bringing an action under § 2241 will not permit the prisoner to evade the requirements of § 2254.'" Greene v. Tennessee Dep't of Correction, 265 F.3d 369, 371 (6th Cir. 2001) (quoting Walker v. O'Brien, 216 F.3d 626, 633 (7th Cir. 2000)). On the other hand, the Sixth Circuit recently assumed, without deciding, that challenges to the denial of parole are properly brought under § 2241. Ali v. Tennessee Bd. of Probation & Paroles, 431 F.3d 896 (6th Cir. 2005).

In Long v. Kentucky, 80 Fed. Appx. 410 (6th Cir. Aug. 21, 2003), another unpublished opinion, a prisoner filed a § 2241 petition challenging restrictions imposed on him by a sex offender treatment program. Similar issues had previously been litigated in § 2254 petitions. The Sixth Circuit, relying on Greene, held the provisions of § 2244(b) to be applicable to that § 2241 petition. 80 Fed. Appx. at 414. Because those claims had already been raised in prior applications, and because the requirements of § 2244(b)(2) had not been satisfied, the panel affirmed the dismissal of the petition by the district court. Id. at 414-15.

successive within the meaning of 28 U.S.C. § 2244(b); therefore, prior authorization from the Sixth Circuit is not required.

The next issue to be considered is whether Clifton has properly exhausted his claims in state court. Prisoners who file § 2241 petitions challenging parole decisions must exhaust their claims prior to filing suit. Urbina v. Thomas, 270 F.3d 292, 295 n.1. (6th Cir. 2001); see also Collins v. Million, 112 Fed. Appx. 628 (6th Cir. Jan. 31, 2005).

A prisoner who is denied parole, or whose parole is revoked, may seek appellate review from the Board, pursuant to Tenn. Code Ann. § 40-28-105(d)(11). Inmates who are dissatisfied with decisions of the Board "may obtain judicial review using a petition for common law writ of certiorari. This petition limits the scope of review to a determination of whether the Board exceeded its jurisdiction or acted illegally, fraudulently, or arbitrarily." Phifer v. Tennessee Board of Parole, No. M2000-01509-COA-R3-CV, 2002 WL 31443204, at *3 (Tenn. Ct. App. Nov. 1, 2002); see also Robinson v. Traughber, 13 S.W.3d 361, 363 (Tenn. Ct. App. 1999); Turner v. Tennessee Bd. of Paroles, 993 S.W.2d 78 (Tenn. Ct. App. 1999). The procedures applicable to common law writs of certiorari are set forth in Tenn. Code Ann. §§ 27-9-101 *et seq.* See Davis v. Maples, No. M2002-02564-COA-R3-CV, 2003 WL 22002660, at *3 (Tenn. Ct. App. Aug. 25, 2004). Claims such as those raised in this petition are routinely raised in state court using this procedure. See, e.g., Moss v. Tennessee Bd. of Probation & Parole, No. M2003-02125-COA-R3-CV, 2004 WL 2583898, at *2 (Tenn. Ct. App. Nov. 12, 2004); York v. Tennessee Bd. of Probation & Parole, No. M2003-00822-COA-R3-CV, 2004 WL 305791, at *1-*2 (Tenn. Ct. App. Feb. 17, 2004); Phifer, 2002 WL

31443204, at *3-*4; Robinson, 13 S.W.3d at 363-65; Arnold v. Tennessee Bd. of Paroles, 956 S.W.2d 478, 482-83 (Tenn. 1997).

In this case, Clifton is challenging parole denials from seven separate years, as well as the revocation of his parole in 1998. The petition does not describe with specificity the steps taken by Clifton to exhaust his claims with respect to each denial of parole and the revocation of his parole in 1998. It appears that Clifton did not file a petition for a common law writ of certiorari with respect to any of the decisions of the Board at issue, with the exception of the 2005 denial. Moreover, Clifton has apparently not received a decision from the Davidson County Chancery Court on the petition for a common law writ of certiorari that he contends he filed on or about July 15, 2005, four months after he commenced this action, and he plainly has not had the opportunity to appeal any adverse decision to the Tennessee Court of Appeals. Accordingly, Clifton has failed to properly exhaust his claims in state court.

Pursuant to Tenn. Code Ann. § 27-9-102, a petition for a writ of certiorari must be filed within sixty (60) days from the entry of the order or judgment at issue. Tennessee courts have dismissed petitions as time barred for failure to file within the time specified by § 27-9-102. See, e.g., Turner, 993 S.W.2d at 80; Sullivan v. Tennessee Bd. of Paroles, 1993 WL 414843 (Tenn. Ct. App. Oct. 20, 1993). Accordingly, as Clifton no longer has any means of exhausting his claims in state court, each and every one of the claims asserted in this petition is deemed exhausted but procedurally barred.

Moreover, it appears that a substantial number of Clifton's claims are time barred.

In Ali v. Tennessee Bd. of Probation & Paroles, 431 F.3d at 897, the Sixth Circuit assumed that the one-year statute of limitations found in 28 U.S.C. § 2244(d)(1) was applicable to § 2241 petitions challenging parole decisions. See also Brock v. Howes, 96 Fed. Appx. 968, 969 (6th Cir. Apr. 30, 2004). In Ali, the Sixth Circuit further assumed that the running of the limitations period is tolled, pursuant to 28 U.S.C. § 2244(d)(2), while the prisoner seeks review of the Board's decision in the state courts. Ali, 431 F.3d at 897. Applying this standard, it appears that Clifton's claims arising out of each and every Board decision, with the sole exception of the denial of parole in 2005, also is time-barred.

Because it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court," summary dismissal prior to service on the respondent is proper. Rule 4, Section 2254 Rules. Accordingly, the petition is hereby DISMISSED.[11]

## IV. APPEAL ISSUES

The Court must also determine whether to issue a certificate of appealability ("COA"). The statute provides:

> (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
>   (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
>   (B) the final order in a proceeding under section 2255.

---

[11] This conclusion is not altered by the Supreme Court's decision in Wilkinson v. Dotson, 125 S. Ct. 1242 (2005), which held that prisoners can challenge unconstitutional parole procedures under 42 U.S.C. § 1983.

> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c); see also Fed. R. App. P. 22(b); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063, 1073 (6th Cir. 1997) (district judges may issue certificates of appealability under the AEDPA). The COA requirement is applicable in this case pursuant to 28 U.S.C. § 2253(c)(1)(A). Greene v. Tennessee Dep't of Corrections, 265 F.3d 369 (6th Cir. 2001).

In Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in Barefoot v. Estelle, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" Slack, 529 U.S. at 484 (quoting Barefoot, 463 U.S. at 893 & n.4).

The Supreme Court recently cautioned against undue limitations on the issuance of certificates of appealability:

> [O]ur opinion in Slack held that a COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application of a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in Slack would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner "'has already failed in that endeavor.'"

Miller-El v. Cockrell, 537 U.S. 322, 337 (2003) (quoting Barefoot, 463 U.S. at 893).  Thus,

> A prisoner seeking a COA must prove "'something more than the absence of frivolity'" or the existence of mere "good faith" on his or her part. . . .  We do not require petitioners to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus.  Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

Id. at 338 (quoting Barefoot, 463 U.S. at 893); see also id. at 342 (cautioning courts against conflating their analysis of the merits with the decision of whether to issue a COA:  "The question is the debatability of the underlying constitutional claim, not the resolution of that debate.").[12]

In this case, there can be no question that any appeal by this petitioner on any of the issues raised in this petition does not deserve attention for the reasons previously stated.  The Court, therefore, DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying habeas petitions.  Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997).  Rather, to appeal *in forma pauperis* in a habeas case, and thereby avoid the $255 appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a).  Kincade, 117 F.3d at 952.  Rule 24(a)(3) provides that if a party was permitted to proceed *in forma pauperis* in the district court, he may also proceed on appeal

---

[12] By the same token, the Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue." Miller-El, 537 U.S. at 337.  Instead, the COA requirement implements a system of "differential treatment of those appeals deserving of attention from those that plainly do not." Id.

*in forma pauperis* without further authorization unless the district court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis."  If the district court denies pauper status, the party may file a motion to proceed *in forma pauperis* and supporting affidavit in the Court of Appeals.  Fed. R. App. P. 24(a)(4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith.  It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter is not taken in good faith, and leave to appeal *in forma pauperis* is DENIED.  Accordingly, if petitioner files a notice of appeal, he must also pay the full $255 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.[13]

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

   s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[13] The notice of appeal itself must be filed in this Court; a motion to proceed *in forma pauperis* should then be filed in the Court of Appeals.